**Jonathan C. Navarro, CSB #198310**
**Law Offices of Jonathan C. Navarro**
**765 The City Drive South, Suite 360**
**Orange, CA 92868**
**Tel.: (714) 647-9361**
**Fax: (714) 647-9362**
**Email: jnavarro@navarro-law.com**

**Attorney for Petitioner**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SHARMA, VIVEK,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**WARDEN, Adelanto ICE Processing Center;**<br><br>**DIRECTOR, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement;**<br><br>**DAVID VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement;**<br><br>**MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security;**<br><br>**TODD BLANCHE, Attorney General of the United States;**<br><br>**Respondents.** | **Case No.: ____________________**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>***[Civil Cover Sheet filed concurrently]***<br><br>**IMMIGRATION DETENTION — EXPEDITED CONSIDERATION REQUESTED**<br><br>**Agency File No.: A226-129-551** |

///

///

**INTRODUCTION**

1. Petitioner, VIVEK SHARMA ("SHARMA" or "Petitioner"), A-Number 226-129-551, is a native and citizen of India, born February 25, 2004, in Yamuna Nagar, Haryana, and an asylum seeker currently detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301. By and through undersigned counsel, Petitioner files this petition for writ of habeas corpus under 28 U.S.C. § 2241 and complaint for declaratory and injunctive relief seeking his immediate release. ICE re-detained him on August 19, 2026, at the Los Angeles ICE office, without a pre-deprivation hearing and without a record that a listed official exercised the revocation discretion in 8 C.F.R. § 236.1(c)(9). See Cheng v. Warden of Adelanto ICE Proc. Ctr., at *3 (C.D. Cal. Sept. 7, 2026); Zheng v. Johnson, No. 5:26-CV-3769-SK, 2026 WL 2621247, at *1 (C.D. Cal. Sept. 3, 2026). Border Patrol encountered Petitioner on August 27, 2024, near Churubusco, New York; served a Warrant for Arrest of Alien (Form I-200), a Notice of Custody Determination (Form I-286), a Notice to Appear (Form I-862), and an Order of Release on Recognizance (Form I-220A); and released him the same day after ERO denied local bed space. He then lived at liberty for nearly two years as a non-detained respondent in INA § 240 proceedings. He timely filed a Form I-589 with EOIR on November 14, 2024, based on political opinion, membership in a particular social group, and the Convention Against Torture; an amended I-589 filed September 9, 2025, added religion. After the August 19 re-detention, the case appears was transferred to the Adelanto Immigration Court. No future hearing is scheduled. No final order of removal has issued.

2. Petitioner further submits this habeas petition under 28 U.S.C. § 2241 for a judicial check on Respondents' decision to detain him under 8 U.S.C. § 1225(b)(2). The Ninth Circuit has held that "aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez

Vazquez v. Bostock, No. 25-6842, slip op. at 10 (9th Cir. July 30, 2026). Petitioner's present custody began with an interior arrest at an ICE office in Los Angeles on August 19, 2026, nearly two years after DHS released him on Form I-220A. That arrest — not the 2024 border encounter — is the custody this Petition challenges. Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025), does not require a different result. Q. Li addressed a warrantless arrest of a person treated as still arriving and held that terminating § 212(d)(5) parole returns the person to § 235(b) custody. Petitioner was served a Form I-200 warrant; was released on Form I-220A, which is § 1226(a)(2)(B) conditional parole, not § 212(d)(5) parole, Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007); and was charged on an NTA that checks "present in the United States who has not been admitted or paroled," not "arriving alien," and that alleges arrival at an "UNKNOWN PLACE, on or about unknown date." Section 1226(a) therefore governs the August 19, 2026 custody.

3. DHS likewise lacks statutory authority to detain Petitioner pursuant to INA § 241(a)(1), 8 U.S.C. § 1231, because no administratively final order of removal has been entered against him. See Johnson v. Guzman Chavez, 594 U.S. 523, 533–34 (2021). Petitioner's applications for asylum, withholding of removal, and CAT protection have not been adjudicated. After the August 19 re-detention, the matter is on the Adelanto Immigration Court detained docket. Detention is therefore governed by §§ 1225 and 1226, not § 1231 — and, under Rodriguez Vazquez, only § 1226(a) applies to the present interior custody.

4. Petitioner seeks declaratory and injunctive relief restoring the liberty Respondents revoked without due process and ordering his immediate release. Courts in this Circuit have ordered release restoring the status quo ante where ICE revoked previously granted liberty without process. See Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025); Cheng, 2026 WL

2629685, at *3; Zheng, 2026 WL 2621247, at *1; Selis Tinoco v. Noem, 818 F. Supp. 3d 1141 (E.D. Cal. Dec. 14, 2025). Petitioner does not claim membership in the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025). That decision is cited only for its reasoning that the July 8, 2025 Interim Guidance is unlawful under the APA and that § 1226(a), not § 1225(b)(2), governs noncitizens in Petitioner's statutory position. The custody that matters here is the August 19, 2026 interior arrest.

5. Independently of the statutory classification dispute, this Petition presents a dispositive constitutional problem. DHS — through Border Patrol, after ERO denied bed space — released Petitioner on Form I-220A on August 27, 2024, and maintained him in the community for nearly two years. Respondents then called him to an ICE office on August 17, 2026, fitted him with an ankle monitor, and on August 19, 2026, took him into custody at that office. Section 236.1(c)(9) permits revocation of a release "at any time in the discretion of" listed officials. The question is whether any such official actually exercised that discretion as to Petitioner's I-220A. No record provided to Petitioner identifies the official, the date of any revocation decision, or a Cancellation of Order on Form I-220A. See Cheng, 2026 WL 2629685, at *3; Zheng, 2026 WL 2621247, at *1. Sections 236.1(f) and 1003.19(g) require notice of a custody change to the Immigration Court; the I-830 dated August 24, 2026, five days after the arrest, is at most that notice to the court. It is not pre-deprivation process and is not a record that a listed official revoked the I-220A. A later opportunity to seek review of custody cannot retroactively supply the process denied before liberty was taken. See Esmail, 2025 WL 3030590, at *6.

6. Petitioner must be released from custody unless and until DHS proves to a neutral adjudicator, by clear and convincing evidence, that he is a present danger to the community or a flight risk and that no condition or combination of conditions can reasonably assure his

appearance and community safety.

7. The Due Process Clause of the Fifth Amendment, as well as statutory and regulatory authorities, require the government to provide noncitizens with notice and a hearing prior to re-detention. Here, Petitioner's rights were violated and continue to be violated each day he remains detained.

## STATEMENT OF FACTS

8. Petitioner is a native and citizen of India, born on February 25, 2004, in Yamuna Nagar, Haryana. He fled India because members of the Bharatiya Janata Party persecuted him on account of his political opinion and work as a volunteer for the Indian National Lok Dal. He joined INLD on September 25, 2022; was threatened on September 2, 2023; was attacked on September 19, 2023; and describes a further attack on March 29, 2024. He timely applied for asylum, withholding of removal, and CAT protection before EOIR.

9. Petitioner entered the United States without inspection on August 27, 2024, near Churubusco, New York, after crossing the New York–Canadian border. Border Patrol encountered him at approximately 8:09 a.m. near State Route 189 and transported him to the Burke Border Patrol station.

10. The same day, August 27, 2024, Border Patrol processed Petitioner for a Notice to Appear and released him. The I-213 records: "Subject was processed for a Notice to Appear Released. Local bed space denied by ERO (A) SDDO Leonard. The subject was served with copies of I-200, I-220A, I-286, I-862, ICE OREC FORM G-56, and a list of free legal services." The I-213 also records "CRIMINAL HISTORY: No criminal history" and negative NCIC, TECS, and NGI checks. A Form I-220A Order of Release on Recognizance is conditional parole under 8 U.S.C. § 1226(a)(2)(B). Ortega-Cervantes v. Gonzales, 501 F.3d 1111, 1115 (9th Cir. 2007).

11. The Notice to Appear, issued August 27, 2024, charges Petitioner solely under INA § 212(a)(6)(A)(i) as an alien present without admission or parole. The NTA checks "You are an alien present in the United States who has not been admitted or paroled" and does not check "arriving alien." It alleges arrival at an "UNKNOWN PLACE, on or about unknown date." It originally set a master hearing in Chicago on March 3, 2025. Petitioner, through prior counsel, moved to change venue to California, listing a North Hollywood residence. Written pleadings dated May 31, 2025 (taken June 3, 2025) concede service, admit the NTA allegations, and concede removability under § 212(a)(6)(A)(i). He timely filed his Form I-589 with the Immigration Court on November 14, 2024 — within one year of arrival — based on political opinion, particular social group, and CAT, and filed an amended I-589 on September 9, 2025, adding religion. On February 4, 2026, the Immigration Judge continued the case and set an individual merits hearing. After the August 19, 2026 re-detention, the case was transferred to the Adelanto Immigration Court detained docket. There are no future hearings for the case.

12. On or about August 17, 2026, ICE called Petitioner to the Los Angeles ICE office and placed an electronic ankle monitor on him. Two days later, on August 19, 2026, ICE detained him at that office and transferred him to Adelanto. Form I-830 dated August 24, 2026 notifies EOIR that Petitioner was "Detained by ICE on 08/19/2026" at the Adelanto ICE Processing Center. That I-830 is notice to the Immigration Court under 8 C.F.R. §§ 236.1(f) and 1003.19(g). It is not a record that a district director or other official listed in 8 C.F.R. § 236.1(c)(9) exercised discretion to revoke the August 27, 2024 I-220A. ICE provided no pre-deprivation hearing. See Cheng, 2026 WL 2629685, at *3; Zheng, 2026 WL 2621247, at *1.

13. At the time ICE re-detained Petitioner — and as of the filing of this petition — his Form I-589 remains pending before the Immigration Court. Petitioner is in pre-final-order removal proceedings. No administratively final order of removal has been entered.

14. Since his I-220A release, Petitioner resided in the United States for nearly two years, including in Indiana and then California (North Hollywood). He complied with all his hearing obligations. ICE knew how to find him: it called him into its own Los Angeles office on August 17, 2026.

15. Petitioner was re-detained without a showing that a listed official revoked the I-220A and without a pre-deprivation hearing on whether any alleged change in circumstances justified taking his liberty. Following that detention, Petitioner has been confined at the Adelanto ICE Processing Center.

16. Petitioner's asylum application remains pending on the Adelanto Immigration Court detained docket. No future hearing is currently scheduled for his case. Absent relief from this Court, he faces prolonged civil detention pending adjudication of his application.

17. Although Petitioner was first encountered near the northern border on August 27, 2024, that encounter does not place the August 19, 2026 interior custody under § 1225(b)(2). Rodriguez Vazquez distinguishes aliens "entering the United States at the border" from aliens "apprehended in the interior." Slip op. at 10, 25. The custody under review is the Los Angeles arrest after nearly two years of I-220A liberty. Q. Li does not hold otherwise: it concerned release on § 212(d)(5) parole and a return to § 235(b) custody when that parole ended, not processing on a Form I-200 warrant, release under § 236 on Form I-220A, and a later interior re-arrest. Respondents' position would convert a long-pending, non-detained asylum case into purported mandatory detention based on a 2025 reinterpretation the Ninth Circuit has rejected for interior apprehensions.

**CUSTODY**

18. Petitioner is currently in Respondents' legal and physical custody. They are detaining him at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301,

and he has been under the direct control of Respondents and their agents since being unlawfully re-detained on or about August 19, 2026.

**JURISDICTION**

19. This Court has jurisdiction under 28 U.S.C. § 2241; U.S. Const. art. I, § 9, cl. 2; and 28 U.S.C. § 1331. Petitioner is in federal custody in violation of the Constitution and laws of the United States. See Demore v. Kim, 538 U.S. 510, 516–17 (2003); Nadarajah v. Gonzales, 443 F.3d 1069, 1075–76 (9th Cir. 2006); Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). This Court may grant relief under 28 U.S.C. §§ 1331, 1651, 2201, and 2241.

20. Specifically, this Court has jurisdiction under 28 U.S.C. § 2241 to review Petitioner's re-detention without an individualized hearing before a neutral adjudicator and his challenge to purported mandatory detention under § 1225(b)(2). See Rodriguez Vazquez, No. 25-6842, slip op. Federal district courts may issue the writ when a person is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

21. Because Petitioner seeks the traditional habeas remedy of release from allegedly unlawful detention rather than review of a removal order, the petition presents a threshold legality-of-detention question. See INS v. St. Cyr, 533 U.S. 289, 301 (2001); Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (detention challenges proceed in the district of confinement).

**REQUIREMENTS OF 28 U.S.C. § 2243**

22. The Court must grant the petition or issue an order to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause issues, Respondents must file a return certifying the true cause of the detention "within three days unless for good cause additional time, not exceeding twenty days, is allowed." Id.

23. Courts have long recognized the significance of the habeas statute in protecting

individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." Fay v. Noia, 372 U.S. 391, 400 (1963).

24. Habeas corpus must remain a swift remedy. Importantly, "the statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" Yong v. INS, 208 F.3d 1116, 1120 (9th Cir. 2000) (internal citations omitted). The Ninth Circuit warned against any action creating the perception "that courts are more concerned with efficient trial management than with the vindication of constitutional rights." Id.

**VENUE**

25. This Court is the proper forum because Petitioner is confined in this District, and a habeas petition challenging present physical confinement lies in the district of confinement. See 28 U.S.C. § 2241(a); Rumsfeld v. Padilla, 542 U.S. 426, 434–35, 443 (2004). Venue is also proper under 28 U.S.C. § 1391(e) because Respondents are federal officers sued in their official capacity and a substantial part of the events occurred in San Bernardino County, where Petitioner is detained. The immediate custodian is the Warden of the Adelanto ICE Processing Center. Service on the United States Attorney and consent practice in immigration habeas actions in this District are governed by General Order 26-05.

**INTRADISTRICT ASSIGNMENT**

26. This action should be assigned to the Eastern Division because Petitioner is detained in San Bernardino County. The decision to re-arrest him was made by the Los Angeles Field Office of ICE.

///

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

27. In habeas claims, exhaustion of administrative remedies is prudential, not jurisdictional. Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017); Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011). A court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Hernandez, 872 F.3d at 988 (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)). Petitioner asserts that exhaustion should be waived because administrative remedies are inadequate and futile, and because his continued detention results in irreparable harm.

28. Exhaustion should be waived because administrative remedies are inadequate and futile. To the extent ICE treats Petitioner as subject to mandatory detention under § 1225(b)(2) or Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025), and Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), Immigration Judges have treated such noncitizens as ineligible for bond under § 1226(a). Pursuit of a bond hearing the agency has predetermined it will deny is a futile gesture. Hernandez, 872 F.3d at 988. Independently, a post-detention bond hearing cannot cure the completed revocation of I-220A liberty without pre-deprivation process. Upon information and belief, Petitioner has not received a constitutionally adequate pre-deprivation hearing on the August 19 re-detention.

29. No statutory exhaustion requirement applies to Petitioner's claim that present custody violates due process. Constitutional challenges to detention are properly before this Court under § 2241. See Hernandez, 872 F.3d at 988; Leonardo, 646 F.3d at 1160.

30. To the extent Respondents contend Petitioner is subject to mandatory detention under § 1225(b)(2), that theory has been rejected for interior apprehensions. See Rodriguez Vazquez, No. 25-6842, slip op. The July 8, 2025 Interim Guidance applying § 1225(b)(2) more

broadly has been declared unlawful under the APA. Maldonado Bautista, 2025 WL 3713982. Petitioner cites that decision for its holding on the Guidance, not as a class-membership claim.

31. More importantly, every day that Petitioner remains detained causes him irreparable harm that cannot be repaired. His continued detention puts his physical and mental health at greater risk, further warranting a finding of irreparable harm and the waiver of the prudential exhaustion requirement. See De Paz Sales v. Barr, No. 19-CV-07221-KAW, 2020 WL 353465, at *4 (N.D. Cal. Jan. 21, 2020).

## PARTIES

32. Petitioner Vivek Sharma is an Indian asylum seeker who fled persecution by BJP workers on account of his political opinion and work as an INLD volunteer. He is seeking asylum, withholding of removal, and CAT protection in pending proceedings now on the Adelanto Immigration Court detained docket. His Form I-589, first filed November 14, 2024, and amended September 9, 2025, remains pending. No final order of removal has issued.

33. Petitioner is currently in Respondents' legal and physical custody at the Adelanto ICE Processing Center in San Bernardino County, California.

34. Respondent Warden of the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, CA 92301, is the immediate legal custodian of the Petitioner, and is sued in his or her official capacity.

35. Respondent Director of Enforcement and Removal Operations of the Los Angeles ICE Field Office, sued in his or her official capacity, is a legal custodian of the Petitioner.

36. Respondent DAVID VENTURELLA is the Acting Director of U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security, and is named in his official capacity. Among other things, ICE is responsible for the administration and enforcement of the immigration laws, including the detention and removal of noncitizens. In his official capacity as

head of ICE, he is a legal custodian of Petitioner.

37. Respondent MARKWAYNE MULLIN is the Secretary of the Department of Homeland Security and is named in his official capacity. DHS is the federal agency encompassing ICE, which is responsible for the administration and enforcement of the INA and all other laws relating to the immigration of noncitizens. Pursuant to section 402 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), and 8 U.S.C. § 1103(a), Respondent Mullin has responsibility for the administration and enforcement of the immigration and naturalization laws and is the ultimate legal custodian of Petitioner.

38. Respondent TODD BLANCHE is the Attorney General of the United States and the most senior official in the U.S. Department of Justice ("DOJ"), and is named in his official capacity. He has the authority to interpret the immigration laws and adjudicate removal cases. The Attorney General delegates this responsibility to the Executive Office for Immigration Review ("EOIR"), which administers the immigration courts and the Board of Immigration Appeals.

## LEGAL FRAMEWORK AND ANALYSIS

### A. Statutory Framework Regarding Re-Detention and Due Process Right to Pre-Deprivation Hearing

39. The Due Process Clause, the INA, and controlling precedent narrow DHS's authority to revoke previously granted liberty. Cf. 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9). Once the government has released a person from custody, that person's conditional liberty "is valuable and must be seen as within the protection of" the Due Process Clause, and its termination "calls for some orderly process." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). These protections extend to noncitizens present in the United States. Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam); Zadvydas v. Davis, 533 U.S. 678, 693 (2001); Hernandez, 872

F.3d at 981.

40. ICE may release a noncitizen who demonstrates that release "would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). A Form I-220A Order of Release on Recognizance is conditional parole under § 1226(a)(2)(B). Ortega-Cervantes, 501 F.3d at 1115. Whether memorialized as bond, recognizance, or another form of release, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), aff'd sub nom. Saravia ex rel. A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." Id. Agents "must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." Id. Section 236.1(c)(9) then provides that release "may be revoked at any time in the discretion of" the district director and other listed officials. The regulation does not itself prescribe notice or enumerated grounds. Due process independently requires orderly process before that discretion is used to take liberty already granted. Morrissey, 408 U.S. at 482. This District has required the government to show how it revoked a prior release — including the identity and title of the official and any Cancellation of Order on Form I-220A — or explain why the petition should not be granted. Cheng, 2026 WL 2629685, at *3; Zheng, 2026 WL 2621247, at *1. No such record has been provided to Petitioner. Sections 236.1(f) and 1003.19(g) require notice of a custody change to the Immigration Court; they do not supply the missing revocation decision or pre-deprivation hearing.

41. Petitioner was previously released from custody following his initial encounter and thereafter resided in the community for nearly two years as a non-detained respondent in §

240 proceedings. That I-220A release reflected a determination that he could be released and created a protected liberty interest. See Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."); Selis Tinoco, 818 F. Supp. 3d 1141; Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025). "Indeed, the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks omitted). That "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey, 408 U.S. at 482.

42. Respondents now purport to hold Petitioner under 8 U.S.C. § 1225(b)(2) since August 19, 2026. That characterization fails. The arrest that created present custody occurred in Los Angeles after nearly two years of interior residence on an I-220A. Rodriguez Vazquez assigns interior apprehensions to § 1226. Q. Li does not convert that custody into § 1225(b) detention: Petitioner was processed on a Form I-200 warrant, released on § 1226 recognizance rather than § 212(d)(5) parole, and charged as present without admission, not as an arriving alien. Respondents also failed to provide a pre-deprivation hearing before a neutral arbiter on whether any alleged change in circumstances justified taking his liberty.

43. The sufficiency of the procedures attending a deprivation of liberty is assessed under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which weighs (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the Government's interest, including the burdens of additional process. Each factor favors Petitioner. The private interest — freedom from confinement after nearly two years of I-220A liberty — is substantial. The risk of erroneous deprivation is high

because Petitioner received no pre-deprivation notice or hearing. Respondents have identified no exigency or other interest that required arresting Petitioner first and providing process later, and any concern about changed circumstances could have been raised at a pre-deprivation hearing. See Fuentes v. Shevin, 407 U.S. 67, 80–82 (1972); Hernandez, 872 F.3d at 994, 996.

44. Consequently, ICE was required to provide Petitioner with notice and a hearing prior to revoking his conditional liberty. Morrissey, 408 U.S. at 481–82; Zinermon v. Burch, 494 U.S. 113 (1990). No exigency justified dispensing with that process. "The government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. The burden of a hearing is at most "minimal," because custody hearings in immigration court are routine. Sun v. Santacruz, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025); Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026), adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

**B. Statutory Framework Regarding Detention – 8 U.S.C. §§ 1225 and 1226, As Construed in This Circuit**

45. The INA prescribes three basic forms of detention for noncitizens: (1) § 1226(a) discretionary detention with bond hearings for noncitizens in regular removal proceedings under § 1229a; (2) mandatory detention under § 1225(b) for certain arriving aliens and recent arrivals; and (3) detention under § 1231 for those with final removal orders. Because Petitioner is in pending § 240 proceedings and no final order of removal has issued, only the first two categories are potentially relevant, and, as explained below, only § 1226(a) applies.

46. Following enactment of IIRIRA, EOIR regulations and decades of practice treated

people who entered without inspection and were present in the interior as detained under § 1226(a) unless another specific authority applied. "That no Administration has ever found a duty mandatorily to detain unadmitted aliens present in the interior of the country is strong evidence that it does not exist." Rodriguez Vazquez, No. 25-6842, slip op. at 5; see also Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

47. On May 15, 2025, the BIA issued Matter of Q. Li, 29 I&N Dec. 66 (BIA 2025), stating that an applicant for admission arrested and detained without a warrant while arriving (whether or not at a port of entry) and placed in removal proceedings is detained under § 1225(b) and ineligible for bond under § 1226(a). On July 8, 2025, DHS issued Interim Guidance requiring that anyone arrested in the United States and charged with being inadmissible be considered an "applicant for admission" under § 1225(b)(2)(A) subject to mandatory detention. On September 5, 2025, the BIA issued Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), adopting this same interpretation.

**B.1 The Ninth Circuit has now squarely held that § 1225(b)(2)(A) does not apply to noncitizens, like Petitioner, apprehended in the interior of the United States.**

48. On July 30, 2026, the Ninth Circuit resolved the statutory question in Rodriguez Vazquez v. Bostock, No. 25-6842, slip op. (9th Cir. July 30, 2026) (Bea, J., dissenting). The court held that "§ 1225(b)(2)(A), based on its text and context, is best construed as applying to aliens entering the United States at the border," while "§ 1226 . . . is best understood as governing inadmissible and deportable aliens present in the interior of the United States." Id. at 25. "[A]liens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Id. at 10. The present custody is an interior apprehension.

49. The Ninth Circuit's construction is consistent with decisions of the First, Second,

Third, Fourth, Sixth, Seventh, Tenth, and Eleventh Circuits rejecting the 2025 reinterpretation of § 1225(b)(2)(A) as applied to noncitizens already present. See Guerrero Orellana v. Moniz, Nos. 25-2152, 26-1094 (1st Cir. Aug. 13, 2026); Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Buele Morocho v. Warden Philadelphia FDC, No. 26-1150 (3d Cir. Aug. 28, 2026); Lopez Garcia v. Guadian, No. 25-7044 (4th Cir. Sept. 10, 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Cirrus Rojas v. Olson, No. 25-3127 (7th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 2026 WL 1876709 (10th Cir. June 30, 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026). The Fifth and Eighth Circuits have disagreed. See Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026); Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026). Petitions for certiorari are pending in related cases (Nos. 25-1415, 26-43, 26-104). Unless and until the Supreme Court holds otherwise, Rodriguez Vazquez controls in this Circuit. Maldonado Bautista, 2025 WL 3713982, reached the same statutory conclusion in this District and vacated the Interim Guidance under the APA. Petitioner relies on that reasoning; he does not assert that he is a member of the Bond Eligible Class.

50. The Ninth Circuit's decision draws on Torres v. Barr, 976 F.3d 918 (9th Cir. 2020) (en banc), which held that "the phrase 'at the time of application for admission' . . . refers to [a] particular point in time," id. at 923–26, and rejected the view that a noncitizen remains in a perpetual state of applying for admission. See United States v. Gambino-Ruiz, 91 F.4th 981, 989 (9th Cir. 2024). Applying that logic to § 1225(b)(2)(A)'s "seeking admission" language, the Ninth Circuit stated that it did "not think an alien present in the interior of the United States remains in the perpetual state of seeking admission (that is, seeking entry), either." Rodriguez Vazquez, slip op. at 32 (citing Gambino-Ruiz, 91 F.4th at 989).

51. Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to the August 19, 2026 interior custody of a noncitizen who had been released on Form I-220A and

had resided in the United States for nearly two years. See Rodriguez Vazquez, slip op.; Gutierrez v. Chestnut, 2025 WL 3514495 (E.D. Cal. Dec. 8, 2025); Jimenez Pascual v. Blanche, 2026 WL 1218832 (E.D. Cal. May 5, 2026).

**FIRST CLAIM FOR RELIEF**

**Due Process — U.S. Const. amend. V**

52. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

53. The Fifth Amendment refers to "persons," not just citizens. Even inadmissible or removable noncitizens are entitled to due process. Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886); Mathews v. Diaz, 426 U.S. 67, 77 (1976); Plyler v. Doe, 457 U.S. 202, 210 (1982); Wong Wing v. United States, 163 U.S. 228, 238 (1896). "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) (internal quotation marks omitted); see also Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 981. Due process "is a flexible concept that varies with the particular situation," Zinermon, 494 U.S. at 127, and "protects individuals against two types of government action: violations of substantive due process and procedural due process," Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) (internal quotation marks omitted).

54. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that the Clause protects." Zadvydas, 533 U.S. at 690. Immigration detention is justified principally to ensure appearance for proceedings or removal and, in appropriate cases, to protect the community. See id. at 690–91. Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

55. Petitioner has a vested liberty interest in his prior I-220A release. Due process does not permit the government to strip him of that liberty without a hearing. Morrissey, 408 U.S. at 482, 487–88. “The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.” Selis Tinoco, 818 F. Supp. 3d 1141; Garcia v. Andrews, 2025 WL 1927596, at *4; Pinchi, 792 F. Supp. 3d at 1032.

56. Petitioner’s re-arrest without a pre-detention hearing violated the Constitution both substantively and procedurally. See J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) (“The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest.” (internal quotation marks omitted)); Mourey, 2026 WL 467567, at *4; Cheng, 2026 WL 2629685, at *3. He has no final order of removal. He appeared when ICE called him to its office. “There is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing.” Martinez Cruz v. Lyons, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025); see also Garcia v. Noem, 2026 WL 194745, at *3 (S.D. Cal. Jan. 14, 2026).

57. The re-detention violated procedural due process. The appropriate remedy is immediate release restoring the status quo ante — the conditions of the August 27, 2024 I-220A — not a post-detention interview or bond hearing while he remains confined. Nazarian, 2025 WL 3236209, at *7; GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000); Esmail, 2025 WL 3030590, at *6. If Respondents later seek to re-detain Petitioner on a different record, they must provide at least seven days’ notice and a hearing before a neutral decisionmaker at which the government bears the burden of proving by clear and convincing evidence a material change in circumstances such that Petitioner is a flight risk or a danger to the

community and that no condition or combination of conditions could reasonably assure his appearance or community safety. Mourey, 2026 WL 467567, at *6; Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025); Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020); Huy Cu v. Marin, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026).

**SECOND CLAIM FOR RELIEF**

**Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2) — Unlawful Denial of Bond / Application of § 1225(b)(2)**

58. Petitioner re-alleges and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

59. Under the APA, a court must “hold unlawful and set aside agency action” that is “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law,” that is “contrary to constitutional right [or] power,” or that is “in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.” 5 U.S.C. § 706(2)(A)-(C).

60. The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to Petitioner’s August 19, 2026 interior custody. Application of § 1225(b)(2) to bar him from any custody determination is not in accordance with law and exceeds statutory authority. 5 U.S.C. § 706(2). See Rodriguez Vazquez, slip op. To the extent Respondents rely on the July 8, 2025 Interim Guidance, that Guidance has already been declared unlawful under the APA. Maldonado Bautista, 2025 WL 3713982. Petitioner invokes that holding as to the Guidance; he does not assert class membership.

**THIRD CLAIM FOR RELIEF**

**Statutory Violation — Detention in Violation of 8 U.S.C. § 1226(a)-(b)**

61. Petitioner re-alleges and incorporates by reference the allegations in the

paragraphs above.

62. Respondents lack statutory authority to detain Petitioner under 8 U.S.C. § 1225(b)(2). That provision, as construed in Rodriguez Vazquez, applies to aliens entering at the border, not to an interior re-arrest after I-220A release and nearly two years of residence. Petitioner's NTA charged him solely as present without admission or parole under INA § 212(a)(6)(A)(i) and did not classify him as an arriving alien. Q. Li does not require a different result for the reasons in paragraphs 2 and 17. Detention is therefore governed by 8 U.S.C. § 1226(a), which authorizes discretionary detention pending a decision on removal and contemplates release on bond or conditional parole. 8 U.S.C. § 1226(a)(2); Ortega-Cervantes, 501 F.3d at 1115.

63. Under § 1226(a), individuals may be detained as a matter of discretion, released on their own recognizance, or released on bond of a reasonable amount. Respondents' failure to apply the correct statutory framework violates the INA and exceeds the government's detention authority.

64. Petitioner respectfully requests that this Court order his immediate release on the conditions of release in effect immediately before his August 19, 2026 re-detention, and enjoin any re-detention absent seven days' notice and a pre-deprivation hearing at which DHS bears the burden of proving by clear and convincing evidence that detention is necessary because of a material change in circumstances.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Issue the writ of habeas corpus or an order to show cause forthwith, and require Respondents to file a return within three days after service of the writ or order, unless the Court

for good cause allows additional time not exceeding twenty days, 28 U.S.C. § 2243; and set a prompt hearing after the return;

(3) Enjoin Respondents from transferring Petitioner outside the jurisdiction of the Central District of California pending the resolution of this case;

(4) Issue a Writ of Habeas Corpus requiring Respondents to immediately release Petitioner on the conditions of his prior release from custody (or on reasonable conditions of release);

(5) Enjoin Respondents from re-detaining Petitioner without providing constitutionally adequate pre-deprivation notice (no less than seven days) and a hearing before a neutral decisionmaker at which DHS bears the burden of proving by clear and convincing evidence that material changed circumstances justify re-detention;

(6) Award reasonable costs and attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, on the claims for declaratory and APA relief, and on any other basis justified under law; and

(7) Grant such further relief as the Court deems just and proper.

September 24, 2026

Respectfully submitted,

/s/ Jonathan C. Navarro
Jonathan C. Navarro, Esq.
Attorney for Petitioner

**VERIFICATION (28 U.S.C. § 2242)**

I, Jonathan C. Navarro, am counsel for Petitioner and submit this verification on his behalf because he is detained. I have reviewed Petitioner's immigration file and the records in this matter and discussed the events described herein with Petitioner. I verify that the factual statements in this Petition are true and correct to the best of my knowledge. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on September 24, 2026, in Orange, California.

/s/ Jonathan C. Navarro
Jonathan C. Navarro, Esq.
Attorney for Petitioner